CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

MAR 2 7 2009

JOHN F. CORCORAN, CLERK
BY: _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARSHALL FRANKLIN METZ, | ) | Civil Action No. 7:09-cv-00022 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NEW RIVER VALLEY REGIONAL | ) | |
| JAIL, et al., | ) | **By: Hon. James C. Turk** |
| Defendants. | ) | **Senior United States District Judge** |

Marshall Franklin Metz, a Virginia prisoner proceeding pro se, filed a civil rights action

pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Metz alleges that

defendants New River Valley Regional Jail ("Jail") and Peggy Murphy, an employee of the Jail,

violated his constitutional right to privacy manifest in his jail phone records. Metz requests

$250,000 in compensatory damages and a transfer to a state correctional facility closer to Dublin,

Virginia. This matter is presently before the court for screening, and the court dismisses the

complaint for failing to state a claim upon which relief can be granted, pursuant to 28 U.S.C.

§ 1915A(b)(1).

I.

Metz filed his complaint on January 27, 2009. The Conditional Filing Order entered on

January 30, 2009, informed Metz that he failed to state a claim against anyone and the Jail was

not a "person" subject to suit under § 1983. Metz responded by submitting letters his wife

allegedly sent to him.

Metz alleges the following information. On November 24, 2008, Murphy told Metz's

wife information without Metz's consent. According to the letters Metz provided to the court,

the information had something to do with Metz allegedly making a phone call to another woman

and his wife wanting to divorce him after hearing about it. Metz's injury was that he believes

there is no longer a chance of reconciling with his wife despite her testifying against him in a

criminal matter. (Additional Evidence (docket #7) 23.)

II.

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that he has

been deprived of a right guaranteed by the Constitution or laws of the United States and that this

deprivation resulted from conduct committed by a person acting under color of state law. West

v. Atkins, 487 U.S. 42, 48 (1988). Metz fails to state a claim upon which relief can be granted

because he does not have a constitutional right to privacy in his inmate phone log.[1] See J.P. v.

Desanti, 653 F.2d 1080, 1091 (6th Cir. 1981) (holding that not all privacy rights or interests in

the non-disclosure of private information implicate constitutional rights); see also Anderson v.

Romero, 72 F.3d 518, 523 (7th Cir. 1995) (declining to extend constitutional right to privacy to

inmate medical records); Watson v. Lowcountry Red Cross, 974 F.2d 482, 487-89, n.9 (4th Cir.

1992) (declining to extend constitutional right to privacy to medical records). Even if he had that

constitutional right, inmates retain only "those [constitutional] rights that are not inconsistent

with [their] status as . . . prisoner[s] or with the legitimate penological objectives of the

corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). A jail's security concerns are

---

[1] The Supreme Court has never proclaimed a "general constitutional right to privacy." Whalen v. Roe, 429 U.S. 589, 607-08 (1977) (Stewart, J., concurring) (quoting Katz v. United States, 389 U.S. 347, 350 (1967)). The United States Constitution does not enumerate a fundamental privacy right. However, the Supreme Court has extended that constitutional right to limited "zones of privacy," including private decisions involving marriage, procreation, contraception, abortion, and child raising and education. The Supreme Court has not created a broad, fundamental privacy right that includes inmate phone logs, noting that the matter of general individual privacy rights is an issue that should be "left largely to the law of the individual States." Katz, 389 U.S. at 351. The court accordingly declines to exercise any supplemental jurisdiction over any state law claim. See 28 U.S.C. § 1367(c)(3).

2

paramount to the effective and safe administration of inmate custody.

A mandatory inmate phone system serves the public's interests to ensure security in the prison and to monitor inmates' contacts with people outside the jail. Therefore, the jail has a legitimate penological objective to maintain and disclose an inmate's phone call logs, and the inmate does not have a greater privacy interest in his inmate trust account relative to the jail and society. See Whalen v. Roe, 429 U.S. 589, 599 (1977) (public interests outweighed individuals' privacy interests in medical records); Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 457 (1977) (public interest outweighed President's privacy interests in personal records); United States v. Miller, 425 U.S. 435, 437-44 (1976) (holding defendant had no legitimate expectations of privacy in his records held by a third party to which he disclosed his affairs). Accordingly, Metz fails to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1), and the court dismisses his complaint.[2]

---

[2] Furthermore, a state may not be sued in federal court for violating either state or federal law unless Congress specifically provides or the state consents to the suit. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984) (superceded in part by 28 U.S.C. § 1367). The Eleventh Amendment also bars claims against any party where the state is the real party in interest and is entitled to sovereign immunity. Id. at 101. A local Virginia jail is a state entity when it is "owned, maintained or operated by any political subdivision or combination of political subdivisions of the Commonwealth." Va. Code § 53.1-1; see McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 894 (E.D. Va. 1992) (holding local Virginia jails are state entities protected by the Eleventh Amendment and are not persons liable under § 1983). The Jail is comprised of a combination of political subdivisions of the Commonwealth of Virginia: the City of Radford and the Counties of Wythe, Pulaski, Floyd, Giles, Grayson, Carroll, and Bland. Accordingly, the Jail is not a person liable under § 1983.

Metz is also barred from collecting damages under § 1983 because he fails to allege any "physical injury" sufficient to support his claim for compensatory damages. "No Federal civil action may be brought by a prisoner confined in a jail . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Metz does not allege any specific "injuries" in this case but merely complains about the possibility of divorce.

Metz also requested a transfer to a state facility near Dublin, Virginia. Metz fails to show how he is entitled to be moved. A prison inmate has no constitutional right to be housed in any particular prison. See Meachum v. Fano, 427 U.S. 215 (1976). Virginia's prison transfer rules do not create a protected liberty interest in any specific housing assignment because prison officials have broad discretion to determine the facility at which a inmate is housed. Waters v. Bass, 304 F. Supp.2d 802, 805 (E.D. Va. 2004) (citing Sandin v. Conner, 515 U.S. 472 (1995); Olim v. Wakinekona, 461 U.S. 238 (1983)).

3

III.

For the foregoing reasons, the court dismisses Metz's § 1983 complaint for failing to state a

claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send copies of this memorandum opinion and the accompanying

order to the plaintiff.

**ENTER**: This ___ day of March, 2009.

_James C. Turk_
Senior United States District Judge

4